IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARVIN CARROLL, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-23-02960 |
| HENRY PORTER, et al., | * |
| Defendants. | * |

\*\*\*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Regency Management Services, LLC, and Henry Porter's Motion to Dismiss (ECF No. 7), and self-represented Plaintiff Marvin Carroll's Motions for Leave to File a Surreply (ECF Nos. 20, 22). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion to Dismiss in part and deny it in part, and grant the Motions for Leave to File a Surreply.

**I.   BACKGROUND**

**A.   Factual Background[1]**

Self-represented Plaintiff Marvin Carroll began working for Regency Management Services, LLC ("Regency") as a furniture salesperson on or about late March or early April

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2022. (Compl. at 1–2, ECF No. 1).[2] He alleges that Regency discriminated against him on the basis of race and disability, and that he was fired in retaliation for planning to report this discrimination. (Id. at 2).

Carroll enjoyed his job when he was first hired and was good at making sales. (Id. at 1–2). Indeed, early on, Carroll's supervisors allowed him to make sales on the floor of the store before the end of the standard forty-five-day training period because of how much he impressed them. (Id. at 2). The incident which gave rise to the alleged retaliatory termination occurred about one month into Carroll's employment. (Id. at 1).[3]

Carroll, who self-identifies as African American, alleges that a white co-worker, Mark, told Carroll to "[g]o and fetch them some water!" in front of white customers. (Id.). Carroll looked away from Mark, stayed calm, and tried sitting down. (Id.). But instead of letting Carroll sit down, Mark stretched his arms out to physically prevent Carroll from sitting and announced that he "didn't give [Carroll] permission to sit." (Id.).[4] Carroll tried

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[3] In his Complaint, Carroll states that certain dates are estimates because he has not been able to access paperwork after his termination, despite his requests for this information. (Compl. at 2). Carroll also commonly only identifies the first name of the parties discussed in the Complaint. Construing self-represented complaints liberally, see Gordon v. Leeke, 574 F.2d 1147, 1151–53 (4th Cir. 1978), the Court uses the time periods and names as identified in the Complaint.

[4] Carroll alleges that at other times during his employment with Regency, he was not allowed to sit when needed. (Compl. at 2). Carroll was eventually allowed to sit during his shifts, but only after Henry Porter, Carroll's manager, forced him to produce a doctor's note. (Id.). Even then, Porter only allowed Carroll to sit for a few minutes, and only in certain places. (Id.). Carroll further alleges that another unnamed white coworker was allowed to sit at will. (Id.).

speaking with Mark after the customers left, but Mark "snapped off" and told Carroll that "I see I can't play with you" and then remarked, "[y]ou people always expect a free ride." (Id.).

That same day, Carroll tried following Mark to continue speaking with him about the incident, but Mark began "fast walking" through the store, preventing Carroll, who uses a cane to walk and self-identifies as disabled, from keeping up. (Id.). Carroll alleges that Mark walked quickly despite knowing about Carroll's disability. (Id.). Later that night, Carroll called his manager, Henry Porter, to tell him about what happened with Mark, but decided not to tell him about the incident at that time because Porter was sick. (Id.). Carroll instead confided in Sharda, his immediate supervisor. (Id.). After speaking with Sharda, Carroll decided not to share the incident with Porter "unless it escalates." (Id.). Sharda agreed with Carroll's decision not to report the incident to Porter. (Id.).

As time went on, Mark never apologized to Carroll for the incident. (Id.). Carroll alleges Mark only continued to "make our workplace a hostile environment." (Id.). Eventually, Carroll, who suffers from depression, anxiety, and PTSD, felt so distressed because of what happened with Mark that he self-harmed, deliberately causing chemical burns to his face, so that he could be out sick and have time to "figure out what to do." (Id. at 3). But while Carroll was out sick and without his consent, Sharda told their

"two bosses"[5] about Carroll's incident with Mark, despite her knowing that Carroll did not want to report the incident unless things escalated. (Id. at 1).

Upon returning from sick leave, Carroll was fired. (Id.). Carroll was told he was being fired because his "job performance wasn't up to par." (Id.). Carroll alleges he was not terminated because of his performance, as his employers insisted, but rather because Sharda told Carroll's supervisors about the incident with Mark. (Id. at 2).

On August 3, 2022, Carroll filed a Complaint with the Maryland Commission on Civil Rights. (Id.). Carroll alleges that during the hearing, Porter lied about the incident. (Id. at 2–3). Carroll further alleges that all of this may have occurred because someone investigated his past criminal history. (Id. at 4).

## B.  Procedural History

Carroll filed an administrative complaint on August 3, 2022, and he received a Right to Sue Letter on August 2, 2023. (See Right to Sue Letter at 1, ECF No. 1-1). On October 30, 2023, he filed his Complaint with this Court, in which he appears to allege claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and failure to accommodate under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq. (See Compl. at 1). Regency filed the instant Motion to Dismiss on January 10, 2024. (ECF No. 7). Carroll filed an Opposition on February 27, 2024. (ECF No. 11). Carroll then filed a Supplement to his Opposition,

---

[5] The Complaint is unclear about who Carroll is referencing with respect to the "two bosses." (See Compl. at 1). The Complaint identifies "Henry" and "Sharda" as Carroll's supervisors. (See id.).

styled as an Amended Complaint, on February 29, 2024. (ECF No. 13). Regency filed a Reply on March 7, 2024. (ECF No. 16). Carroll filed a Motion for Leave to File Surreply on May 1, 2024. (ECF Nos. 20, 20-1). Regency filed an Opposition to the Motion for Leave to File Surreply on May 2, 2024. (ECF No. 21). Carroll filed a second Motion for Leave to File Surreply on June 27, 2024. (ECF No 22).

## II.  DISCUSSION

**A.  Standard of Review**

Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (Def.'s Mem. Supp. Mot. Dismiss ["Mot."] at 1, ECF No. 7-1). The Court will address each standard in turn.

**1.  Rule 12(b)(5)**

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss for insufficient service of process. If service is contested, the "plaintiff bears the burden of establishing the validity . . . pursuant to Rule 4." O'Meara v. Waters, 464 F.Supp.2d 474, 476 (D.Md. 2006). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." Clark v. AT&T Corp., No. DKC-13-2278, 2014 WL 1493350, at *2 (D.Md. Apr. 15, 2014) (quoting O'Meara, 464 F.Supp.2d at 476). "The 'plain requirements for the means of effecting service of process,' however, 'may not be

ignored.'" Id. (quoting Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984)).

### 2.     Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268

6

(1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

**1.     Insufficient Service of Process**

Defendants assert that as an initial matter, they are entitled to relief under 12(b)(5) because Carroll failed to properly serve Porter and Regency in compliance with Rule 4. (Mot. at 1]. The Court declines to dismiss the Complaint on this basis for the reasons described below.

On December 1, 2023, this Court granted Carroll's Motion for Leave to Proceed In Forma Pauperis and provided instructions to effect service, including how to serve a corporation and an individual. (ECF No. 4). Specifically, the Court explained that Carroll needed to obtain the name and service address for the resident agent of Regency Furniture and serve Porter in a manner consistent with state law. (Id. at 2). Instead of adhering to the Court's careful instructions, Carroll failed to identify: (1) the correct entity for Regency

Management, LLC; (2) the correct resident agent for Regency Management, LLC; and (3) the correct address for Porter. (Summons at 2–4, ECF No. 6).

Carroll bears the burden of "establishing the validity of service pursuant to Rule 4." Parker v. Am. Brokers Conduit, 179 F.Supp.3d 509, 514 n.8 (D.Md. 2016) (quoting O'Meara, 464 F.Supp.2d at 476). Carroll has failed to meet that burden. As Regency correctly notes, Carroll instead "seemingly attempts to substitute Regency Management Services, LLC" by writing in "LLC" in a subsequent briefing. (Reply in Further Supp. Def.'s Mot. Dismiss ["Reply"] at 2, ECF No. 16). Trading in the correct name for a defendant on later briefs does not establish valid service, and Carroll has not addressed the other deficiencies.

Despite these errors, "[w]hen the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." Armco, 733 F.2d at 1089. Here, Regency received actual notice, as demonstrated by its filings in this case. See Parker v. Cartwright, No. 1:23-CV-01628-JRR, 2024 WL 622077, at *3 (D.Md. Feb. 13, 2024). While Carroll may not ignore the rules for properly effecting service of process, in light of his pro se status, and because addressing the merits does not change the outcome of its analysis below, the Court declines to dismiss Carroll's Complaint against Regency on this basis.

### 2. Surreplies

Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically

used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012). Although Plaintiff did not raise new arguments in his Reply, the Court will grant Carroll's Motions for Leave to File Surreply due to his pro se status. Further, the Court finds that because the arguments contained in his Surreply do not change the outcome of its analysis below, Defendant will not be unduly prejudiced by them. Accordingly, the Court grants the Motions, (ECF Nos. 20, 22), and considers his Surreply below.

### 3. Discrimination

#### a. Individual Liability

Regency argues all claims against Porter should be dismissed because there is no liability for employees in their individual capacities for violations of Title VII or the ADA. (Mot. at 7). Regency is correct on both fronts.

"Title VII does not provide a remedy against individual defendants who do not qualify as employers." Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999) (internal quotation marks omitted). Title VII similarly instructs that "a person cannot be held liable under Title VII in his or her individual capacity unless the person qualifies as

an 'employer' within the meaning of the statute." <u>Hughley v. JetBlue Airways Corp.</u>, No. GLR-19-3523, 2020 WL 3451984, at *3 (D.Md. June 24, 2020). Here, Carroll identifies Porter as a manager. (<u>See</u> Compl. at 2). Porter cannot be held liable in his individual capacity for a Title VII or ADA violation. Accordingly, all claims against Porter will be dismissed.

      **b.**  **Direct and Indirect Evidence of Discrimination**

Regency next argues that Carroll's racial discrimination claims, to the extent they are pleaded, fail to state a claim upon which relief may be granted. (Mot. at 10–11; Reply at 3). The Court agrees.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (1). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." <u>Carrol v. Ports Am. Chesapeake, LLC</u>, No. GLR-22-3288, 2024 WL 1012882, at *6 (D.Md. Mar. 7, 2024) (quoting <u>Netter v. Barnes</u>, 908 F.3d 932, 938 (4th Cir. 2018)).

To establish a claim of indirect discrimination or retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework, Carroll must <u>eventually</u> put forth a prima facie case by establishing that:

> (1) he belongs to a protected class;
> (2) he suffered an adverse employment action;

> (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations . . . ; and
> (4) he was rejected [or terminated] under circumstances giving rise to an inference of unlawful discrimination.

See Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973), and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Carroll succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

Construing Carroll's Complaint liberally, he appears to allege both direct and indirect evidence of racial discrimination under Title VII. Carroll alleges direct evidence of discrimination due to his white co-worker, Mark, demanding him to "fetch" water in front of white customers and telling Carroll that "[y]ou people always expect a free ride!" (Compl. at 1). Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the

11

contested employment decision." Cole v. Fam. Dollar Stores of Md., Inc., 811 F. App'x 168, 175 (4th Cir. 2020) (emphasis added).

The Court finds that Carroll has failed to plead sufficient facts to show that the incident with Mark "bear[s] directly on the contested employment decision." (Id.). For instance, Carroll asserts that Porter has "done nothing to help" him get information, including tax records, after he was terminated. (Compl. at 2). This refusal to help is, in Carroll's view, evidence of "hostility" that would not occur "if this was truly and simply only about poor job performance!" (Id.). But choosing not to grant a former employee access to restricted information is unremarkable. Nevertheless, the text message thread that Carroll attaches to his Complaint shows Porter telling Carroll that he would notify HR of Carroll's requests. (Compl. at 32).[6] Further, Carroll concedes that he believes his termination "may have been provoked" by someone investigating his past criminal history. (Compl. at 4, 5; Mot. at 3; Reply at 6). And in that case, Carroll's claim still fails because "individuals with arrest records are not a protected class under Title VII." Wright v.

---

[6] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). Here, the text messages are attached to the Complaint. Accordingly, the Court will consider these documents.

Pittsylvania Cnty. Schs., No. 4:16-CV-00029, 2016 WL 7409383, at *2 (W.D. Va. Dec. 22, 2016).

Carroll's claim fares no better as evidence of indirect discrimination under the McDonnell Douglas framework. As an African American, Carroll is a member of a protected class, satisfying the first element. He also suffered an adverse employment action when Regency fired him, satisfying the second element. Carroll alleges he was a good salesperson when he was fired, (Pl's Opp'n Mot. Dismiss [Opp'n] at 2, ECF No. 11; Pl's Mot. Leave File Surreply ["Surreply"] at 2–3, ECF No. 20-1), satisfying the third element. As discussed above, however, Carroll fails to show he was terminated under circumstances giving rise to an inference of unlawful discrimination. He alleges he was terminated because his "two white racist bosses were now protecting their white racist employee!" (Compl. at 2; Opp'n at 2). But "merely labelling others' conduct as 'discriminatory,' 'harassing,' or 'retaliatory' is insufficient to carry the day." Hurtt v. Baltimore Cnty., Md., No. JKB-12-445, 2014 WL 583008, at *6 (D.Md. Feb. 10, 2014). Taking these allegations as true and construing them in the light most favorable to Carroll, the Court cannot infer that Regency acted with discriminatory animus and fired Carroll due to his race.

        **c.**    **Disparate Treatment**

Carroll next argues that he has stated a claim for discrimination by showing Regency's disparate treatment of employees outside his protected class. (Compl. at 2). Specifically, Carroll, who identifies as African American, alleges that he was not permitted to sit down at work while another unnamed white co-worker was allowed to sit at will. (Id.).

To the extent they intend to rely on comparator evidence, plaintiffs in the Fourth Circuit must demonstrate that they are similarly situated with a comparator "by showing that they both (1) 'dealt with the same supervisor,' and (2) were 'subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Tinsley v. City of Charlotte, 854 F.App'x 495, 500–01 (4th Cir. 2021) (quoting Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019)). This Court has previously dismissed Title VII complaints in which the only allegations of discriminatory intent come from insufficient comparator evidence. See Chatelle v. Maryland, No. GLR-21-1734, 2022 WL 2953042, at *8 (D.Md. July 25, 2022) (dismissing complaint when comparator evidence fails to establish discriminatory intent or causation); Price v. Howard Cnty. Pub. Sch. Sys., No. GLR-22-541, 2023 WL 170425, at *10 (D.Md. Jan. 11, 2023) (same).

Here, Carroll fails to meet the first element of the claim because he does not identify whether this unnamed co-worker who was allowed to sit down "at will" reported to the same supervisor. Next, Carroll fails to meet the second element because he concedes that he was allowed to sit once he produced a doctor's note and fails to show his co-worker was not subject to the same requirement. (Compl. at 2). Carroll thus cannot state a claim for discrimination based on comparator evidence.

4.  **Retaliation**

Title VII prohibits an employer from retaliating against an employee who exercises his Title VII rights. Hart v. Lew, 973 F.Supp.2d 561, 582 (D.Md. 2013). In order to

establish a prima facie claim of retaliation under Title VII, Carroll "must show that []he engaged in protected activity, that h[is] employer took adverse action against h[im], and that a causal relationship existed between the protected activity and the adverse employment activity." Id. If he succeeds in establishing a prima facie case, the McDonnell Douglas framework applies, just as it does for a discrimination claim: "If a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for the adverse action, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. (cleaned up).

Regarding the first element, Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Protected activity, "therefore, can take the form of either opposing a practice prohibited under Title VII ([under] the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII ([under] the participation clause)." Pitter v. Cmty. Imaging Partners, Inc., 735 F.Supp.2d 379, 395 (D.Md. 2010). "The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." Id. at 396.

Carroll alleges that Regency terminated him in retaliation for reporting the incident with Mark to Sharda. (Compl. at 1). Specifically, he alleges that his two supervisors wanted to protect Mark from getting into any trouble once they discovered Carroll's complaints

15

about Mark's behavior. (See id.). At bottom, Carroll alleges that Regency terminated him not because of his performance, which he insists was not at issue, but in retaliation for engaging in protected activity. (See id. at 1–2).

The Court finds that Carroll has stated a prima facie case of retaliation. First, Carroll engaged in protected activity by reporting the incident with Mark to Sharda, one of his supervisors. (Compl. at 1). Second, Regency took adverse action against Carroll by terminating him. (Id.). Third, Carroll alleges that he was terminated shortly after he reported the incident to Sharda, as soon as he returned from sick leave, (id. at 2), which, at this stage, is sufficient to allege a causal connection. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir.1998) ("[E]vidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to satisf[y] the less onerous burden of making a prima facie case of causa[tion].") (cleaned up).

Carroll has plead a prima facie case of retaliation because he has alleged all three elements. See Hart, 973 F.Supp.2d at 582. Under the McDonnell-Douglas framework, the burden then shifts to Regency to offer a non-discriminatory explanation for the adverse action. See id. Regency contends that Carroll was terminated due to his poor performance and that his claims otherwise amount to nothing more than speculation. (Mot. at 3, 13). Carroll alleges that he could not have possibly been terminated due to poor performance because he excelled quickly at making sales. (Compl. at 6).

At this stage, the Court finds that Carroll has alleged facts "supporting a plausible inference that [the employer took an adverse employment action against the plaintiff]

'because' of [the plaintiff's] protected activity." Barbour v. Garland, No. 22-1815, 2024 WL 3092297, at *9 (4th Cir. June 24, 2024) (quoting Holloway v. Maryland, 32 F.4th 293, 300 (4th Cir. 2022)). The Fourth Circuit recently explained that "[a] complaint . . . will survive a Rule 12(b)(6) motion so long as the employer's explanation 'does not render [the complaint's] allegations implausible.'" Id. at *8 (citation omitted). Here, Regency fails to offer "an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that [] renders [Carroll's] claim of pretext implausible." Id. Accordingly, its Motion will be denied as to the retaliation claim.

    **5.    Hostile Work Environment**

Next, Regency argues that Carroll's claims of hostile work environment based on his race or disability under Title VII and the ADA should be dismissed. (Mot. at 8; Reply at 6). The test for hostile work environment is the same under the ADA and Title VII. See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). In both contexts, Carroll's claims fail as a matter of law.

To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)). To determine whether conduct is objectively severe or pervasive, a court is to look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019).

Regency argues that Carroll fails to allege sufficient facts to state a plausible hostile work environment claim under Title VII and the ADA. (Mot. at 8; Reply at 4). The Court agrees. Carroll alleges a single incident in which Mark made the following comments: "Go and fetch them some water!"; "I didn't give you permission to sit!"; "I see I can't play with you!"; and "You people always expect a free ride!" (Compl. at 1; Mot. at 8). Carroll also vaguely alleges that Mark continued to make the workplace a hostile environment. (Compl. at 1).

The Court finds these facts insufficient to support a hostile work environment claim. The Fourth Circuit has made clear that "[i]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." Perkins, 936 F.3d at 208. In other words, "[r]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." Id. In his Opposition, Carroll adds new assertions that other co-workers started "behaving oddly" around him and that Mark would follow Carroll in his car after leaving work. (Opp'n at 1). As part of the duty to construe pro se pleadings liberally, courts have authority to consider newly alleged facts in a response to a motion to dismiss. See Arije v. Pointcross Life Scis., No. JKB-18-3119, 2019 WL 652426, at *3 (D.Md. Feb. 15, 2019). But even after considering these additional allegations, Carroll's generalized claims are not plausible and otherwise

do not arise to the level of severity, intensity, or frequency required to state a hostile environment claim. (See id.). Accordingly, Carroll's hostile work environment claims under Title VII and the ADA will be dismissed.

### 6. Failure to Accommodate

Carroll also appears to allege a failure to accommodate claim under the ADA. To plead a failure to accommodate claim, a plaintiff must show:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.

Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and thus the Court must liberally construe Carroll's Complaint. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984).

Carroll satisfies the first element because he often walks with a cane, has a handicapped license plate on his car, and a handicapped parking space in front of his home. (Compl. at 2). Carroll satisfies the second element because he produced a doctor's note notifying his employer about his disability. (Id.). Carroll satisfies the third element because he most likely could perform his sales duties if he was able to occasionally sit down.

Carroll's claim, however, fails to meet the fourth element to show that the employer refused to make a reasonable accommodation. Under the ADA, an employer has a duty to engage in an "interactive process" as "a means for determining what reasonable accommodations are available to allow a disabled individual to perform the essential job

19

functions of the position sought." Wilson, 717 F.3d at 347. Here, Carroll's claim fails because he concedes that Porter "eventually allowed" him to sit when needed after providing a doctor's note, although "only for a few minutes, and only in certain places." (Compl. at 2; Mot. at 12; Reply at 5). Carroll then alleges he was allowed to go to the break room when he needed to sit, but that the walk there was too far. (Opp'n at 1; Compl. at 2). On these facts, Regency was engaging in an "interactive process" to reasonably accommodate Carroll. See London v. Loyola High Sch. of Baltimore, Inc., No. DKC 17-2219, 2019 WL 4673436, at *6 (D.Md. Sept. 25, 2019), ("An accommodation can be reasonable even if it is not the employee's requested accommodation."), aff'd, 806 F.App'x 255 (4th Cir. 2020). The Court finds that Carroll's failure to accommodate claim fails.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss in part and deny it in part. (ECF No. 7). The Motion to Dismiss will be denied as to the retaliation claim and granted as to all other claims. The Court will grant the Motions for Leave to file Surreply. (ECF Nos. 20, 22). Regency will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 2nd day of July, 2024.

/s/
George L. Russell, III
United States District Judge